VIRGIL MOODY v. THE STATE.

No. 6567.   Decided January 11, 1922.

1.—Assault to Murder—Statement of Facts—Questions and Answer—Bill of Exceptions.

As it appears possible in the instant case, that the insertion of certain questions and answers in said statement of fact may have been with the idea that such method made clearer complaints regarding parts of the evidence, the State's motion to strike out is overruled. The court observes, however, that it is not necessary to insert questions and answers in the statement of facts in order to make plain any ruling of the lower court.. The bill of exceptions must do this.

**2.—Same—Evidence—Bill of Exceptions—Res Gestae.**

Where from neither bill of exceptions, this court could determine how long after the cutting it was before the statements referred to were made, or what was the condition of the injured party at the time, and the court stating that the testimony was admissible as res gestae, and his qualification was accepted, there was no reversible error.

**3.—Same—Evidence—Arrest—Declaration of Defendant.**

The mere fact recited in the bill that the sheriff came to where defendant was or had talked to him after the cutting and prior to the making of certain statements by defendant, would not be tantamount to such showing of an arrest as would be necessary in order to exclude such statements, and this showing would not support objections to statements of defendants made after said visits of the sheriff, and there is no reversible error.

**4.—Same—Bill of Exceptions—Reputation—Practice in Trial Court—Rule Stated.**

Where the bill of exceptions complains that certain witnesses were allowed to state in their testimony that they would not believe the prosecutrix, the alleged injured party, on oath, the same is reversible error. The rule is that the witness may not be asked if he would or would not believe on oath the party inquired about, although he may be asked if from general reputation said party is worthy of belief under oath.

**5.—Same—Aggravated Assault—Charge of Court—Practice in Trial Court.**

Where, upon appeal from a conviction of assault to murder, it appeared from the record that the appellant excepted to the charge of the court below for his failure to submit the issue of aggravated assault, and the record also showed that the issue was raised by the evidence, the same is reversible error.

**6.—Same—Deadly Weapon—Pocket-knife—Intent to Kill.**

That one cuts another with a pocket-knife voluntarily does not make him guilty of assault to murder, unless an intent to kill is shown, and the mere fact that the pocket-knife was used is not proof that it was a deadly weapon. Following Johnson v. State, 49 Texas Crim. Rep., 429.

**7.—Same—Case Stated—Aggravated Assault—Assault to Murder.**

If appellant cut his wife without excuse, he might be guilty of aggravated assault, or assault to murder, but unless the evidence so plainly makes out one offense as to clearly exclude the other, it would be the duty of the trial court to submit the law relative to each, and leave the question to the jury.

**8.—Same—Self-Defense—Charge of Court—Practice in Trial Court.**

The theory of the defendant should be presented in an affirmative charge, applicable to the facts offered to support such theory, whether the same be true is a matter for the jury.

Appeal from the District Court of Johnson. Tried below before the Honorable Irwin T. Ward.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

R. G. Storey, Assistant Attorney General, for the State.—On question of statement of facts by question and answer; Felder v. State, 59

Texas Crim. Rep., 144.   Hargrave v. State, 53 id., 147; Mooney v. State, 73 id., 123.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Johnson County of assault to murder, and his punishment fixed at two years in the penitentiary.

The State moves to strike out the statement of facts upon the ground that the greater part thereof is made up of questions and answers. The motion finds some support, and attention of the officers charged with the duty of the preparation of statements of facts is again called to the necessity that such statements should be in narrative form; but as it appears possible in the instant case that the insertion of certain questions and answers in said statement of facts may have been with the idea that such method made clearer complaints regarding parts of the evidence, we overrule the State's motion.  We observe, however, that it is not necessary to insert questions and answers in the statement of facts in order to make plain any ruling of the lower court.  The bill of exceptions should be complete, and if not so when presented for filing it should be rejected, and, in a proper case, a complete bill of exceptions should be prepared and filed by the trial court. There is no brief on file for appellant herein.

By his bills of exception Nos. 1 and 3 appellant complains of certain testimony of Mrs. Moody, the alleged injured party, and Dr. Ball, as to statements made by Mrs. Moody to the doctor when he came to the place where the trouble occurred.  Without setting out at length the averments of said bills of exception, we conclude that neither shows error.  From neither bill can we learn how long after the cutting it was before the statements were made, nor what was the condition of Mrs. Moody at the time, nor whether said statements were made in the presence of appellant.  The court approves these bills, stating that the evidence was admitted as part of the *res gestae*.  The bills were accepted with this qualification upon them and contain nothing showing to the contrary.  This also applies to appellant's bills of exception Nos. 2. 4, and 5.  The mere facts recited in said bills that the sheriff came to where appellant was, or had talked to him after the cutting and prior to the making of certain statements by appellant, would not be tantamount to such showing of an arrest as would be necessary in order to exclude such statements, and this showing would not support objections to statements of appellant made after said visit of the sheriff. No conduct of said officer or any statement of his appears in any of said bills which indicates any arrest or suggestion of restraint, or custody of appellant.  When a witness on the stand appellant did not claim that he made any of said statements while under restraint, or while he thought himself to be under arrest.  See sec. 62, p. 35, Branch's Ann. P. C., and collated authorities.

By his bills of exception Nos. 7 and 8 appellant complains that certain witnesses were allowed to state that they would believe Mrs.

Moody, the alleged injured party, on oath. From the record we observe that both said witnesses were introduced by the State and gave testimony that the general reputation of Mrs. Moody for truth and veracity was good. After being cross-examined and turned back to the State for further examination, each of said witnesses was asked by the county attorney: "Would you believe Mrs. Moody upon oath?" and it is shown that over objection each was permitted to answer in the affirmative. This was error. In Boone v. Weathered, 23 Texas, 675, and in all subsequent Texas authorities, the rule seems clearly adhered to that the witness may not be asked if he would or would not believe on oath the party inquired about. Marshall v. State, 5 Texas Crim. App., 273; Halbert v. State, 9 Texas Crim. App., 219; Bluett v. State, 12 Texas Crim. App., 39; Douglass v. State, 98 S. W. Rep., 840; Ware v. State, 36 Texas Crim. Rep., 598; Edgar v. State, 59 Texas Crim. Rep., 488, 129 S. W. Rep., 141. A witness who has testified that the general reputation of the party under investigation is good or bad, may also be asked if from such general reputation said party is worthy of belief under oath, but in no case in this state known to us has it been held that the witness may be asked whether he would or would not believe such person under oath.

Appellant excepted to the charge of the court below for his failure to submit the issue of aggravated assault. The trial court, after such exception, did not change his charge or submit said issue. We think a charge on aggravated assault should have been given, and that the failure to give same when excepted to was error. The offense charged was an assault to murder, the gist of which is an assault and intent to kill. Admitting the assault, and discussing only the intent to kill, we observe there was no threat to kill accompanying or preceding the assault, nor any subsequent statement made by appellant suggesting such intent, nor was there evidence of antecedent menaces or former grudges, or any of those things from which we ordinarily deduce malice. The parties were husband and wife, and while they had been separated for a few weeks, they seem to have been on good terms during the period of their separation, which seems to have come about because of the inability of appellant to make a living. Mrs. Moody says that on the night preceding the trouble appellant came to her house and when he left, she kissed him. On the day of the occurrence he came again to her house and called her to the back porch where she sat down and he sat near her on the steps. Evidently he was urging her to submit her person to him. She says he kept insisting that they go into the house, and that she, knowing what he wanted, refused. Finally he picked her up in his arms and carried her into the house. He put her down and she says she again refused, and told him that she had two children and did not want any more, and that he could not support her or a child. She says that he then drew his knife and cut her and then cut himself. She further testified that he sank to the floor, and that both arose and walked together through the kitchen and

out through the bed room. She did not flee. There was no out-cry. Mr. and Mrs. Steadman sat on the front porch during the occurrence and knew nothing of it until Mrs. Moody walked out there after the cutting, with the knife in her hands, which she says she took out of appellant's hands as he sank down on a trunk.

That one cuts another with a pocket-knife voluntarily, does not make him guilty of assault to murder. An intent to kill must appear from the facts. What was appellant's purpose? What sort of weapon did he use? Unless the weapon was deadly, would an assault to murder necessarily follow? The weapon used by appellant was a pocket-knife. No witness testified to its size or the length of any blade. The mere fact that a pocket-knife was used does not establish that it was a deadly weapon. Martinez v. State, 35 Texas Crim. Rep., 386; Johnson v. State, 49 Texas Crim. Rep., 429; Barnes v. State, 52 Texas Crim. Rep., 407; Ross v. State, 61 Texas Crim. Rep., 12. No presumption of intent to kill arises from the use of a weapon not shown to be deadly. Art. 1147, Vernon's P. C.; is as follows:

"The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless, from the manner in which it was used, such intention evidently appears."

Not only did Mrs. Moody fail to give any description of the knife or the wounds inflicted upon her, but Dr. Ball, the physician who attended her, testified that he did not probe her wounds, though at the time he thought they were serious. No other person bore witness to the character or seriousness of the wounds upon Mrs. Moody. No one testified that she was confined to her bed, or as to what ill-effects she suffered from such wounds. Dr. Ball says she developed a pleurisy, but that it might happen from almost anything.

If appellant cut his wife without excuse he might be guilty of aggravated assault, or of assault to murder, but unless the evidence so plainly makes out one offense as to clearly exclude the other, it would be the duty of the trial court to submit the law relative to each and leave the settlement of the issue of fact where it belongs,—with the jury. The evidence in this case does not so plainly support either issue as to exclude the other, and upon exception being presented to the court for his failure to submit the issue of aggravated assault, he should have corrected the charge, or have given a supplemental charge presenting such issue.

The court's charge on self-defense was meager. There was an exception taken to the failure to charge that appellant did not have to retreat but might stand his ground and defend against an unlawful attack. Appllant swore that his wife attacked him with a knife and began cutting him without any provocation on his part whatever, and that he drew his knife and cut her in self-defense. The theory of the defendant should be presented in an affirmative charge applicable to the

facts in evidence offered to support such theory. Whether such facts be true and such defense effective, is a matter for the jury.

For the errors mentioned the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*